**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
HARVEY B. PATS, M.D., P.A.    :    Civ. No. 3:20CV00697(SALM)
                              :
v.                            :
                              :
THE HARTFORD FIRE INSURANCE   :
COMPANY                       :    December 17, 2021
                              :
------------------------------x
```

<u>**RULING ON MOTION TO DISMISS [Doc. #41]**</u>

Defendant The Hartford Fire Insurance Company ("The Hartford") has filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking to dismiss the Second Amended Complaint in its entirety. [Doc. #41]. Plaintiff has filed a memorandum in opposition to the motion to dismiss [Doc. #42], to which The Hartford has filed a reply [Doc. #43]. For the reasons stated herein, the Motion to Dismiss [**Doc. #41**] is **GRANTED**.

**I.   <u>Procedural Background</u>**

Plaintiff Harvey B. Pats, M.D., P.A. ("Dr. Pats") brought this action on May 20, 2020, against three named defendants: The Hartford; Hartford Financial Services Group; and Commercial Inland Marine Hartford Fire Insurance Company. <u>See</u> Doc. #1 at 1.[1] Before the Complaint was answered, plaintiff filed an Amended

---

[1] Throughout this Ruling, the Court cites to the page numbers reflected in each document's ECF header, rather than any numbering applied by the filing party.

Complaint against the same defendants. See Doc. #9. On June 23, 2020, plaintiff filed a Notice of Voluntary Dismissal as to Hartford Financial Services Group and Commercial Inland Marine Hartford Fire Insurance Company, leaving only The Hartford as a defendant. See Doc. #19. The Hartford sought a pre-filing conference with Judge Janet Bond Arterton, then the presiding judge, asserting that it had grounds to dismiss the claims against it. See Doc. #34. After a conference with the parties, Judge Arterton ordered a Second Amended Complaint filed, and a briefing schedule was set for The Hartford's motion to dismiss. See Doc. #38.

The Second Amended Complaint was filed on May 17, 2021. See Doc. #40. The Hartford filed the instant Motion to Dismiss on June 8, 2021. See Doc. #41. This matter was transferred to the undersigned on November 1, 2021. See Doc. #45.

## II.  **Factual Background**

Plaintiff "owns and operates a medical practice in the State of Maryland." Doc. #40 at 2. "Defendant issued an insurance policy to Plaintiff (policy number 30 SBA DS2520) that includes coverage for business interruption losses incurred by Plaintiff from July 15, 2019 through July 15, 2020 ('Policy')." Id.

In March 2020, the State of Maryland issued a series of escalating orders in response to the spread of COVID-19 that

culminated in a "stay at home order for the entire state." Id.
at 17. As a result of this order, "Plaintiff has been unable to
treat patients for treatment which is not considered an
emergency by the state." Id. Specifically, plaintiff alleges:

> 98. As a result of the Civil Authority Orders referenced
> herein, Plaintiff was required to shut its doors and
> cease operation of its medical practice.
>
> 99. Plaintiff's business losses occurred when the State
> of Maryland issued its March 23, 2020 Order, directing
> all "non-essential" businesses to cease operations at
> physical locations and prohibiting the gatherings of
> "non-essential" individuals.
>
> 100. Prior to March 23, 2020, Plaintiff's practice was
> open. Plaintiff's practice is not a closed environment,
> and people – staff, customers, community members, and
> others – constantly cycle in and out of the practice.
> Accordingly, there is an ever-present risk that the
> Insured Property are contaminated and would continue to
> be contaminated.

Id. at 19.

Plaintiff further contends: "On information and belief,
there was community spread of COVID-19 prior to the
closures pursuant to state and local Civil Authority Orders, and
COVID-19 was in the Plaintiff's Property before it was required
to shut down." Id. at 20. Plaintiff alleges that he has suffered
"direct physical loss of or damage to its property due to the
COVID-19 Pandemic[]" because "COVID-19 made the Insured Property
unusable in the way that it had been used before the Pandemic,
rendered the property substantially unusable and

uninhabitable, intruded upon the property, damaged the property, prevented physical access to and use of the property, and caused a suspension of business operations at the property." Id. at 20 (quotation marks omitted). "The COVID-19 Pandemic also caused physical loss and damage to property near Plaintiff's Insured Property." Id.

The Policy, by its terms, provides coverage "for direct physical loss of or physical damage to Covered Property ... caused by or resulting from a Covered Cause of Loss." Doc. #40-1 at 4 (excerpt of Policy attached to Second Amended Complaint). The Policy covers "Business Income" losses as follows: "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises'." Doc. #41-2 at 38. As to "Extra Expense" coverage, the Policy provides that The Hartford "will pay reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises' ... caused by or resulting from a Covered Cause of Loss." Id.

The Policy includes the following Virus Exclusion:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus.

Id. at 118. Although the parties dispute the import of this provision, they do not dispute that it is included in the relevant Policy. Plaintiff alleges: "Defendant provides for a Virus Exclusion under the policy. The exclusion for viruses does not apply to this pandemic. The Policy does not identify any exclusions for a pandemic." Doc. #40 at 4. "Upon information and belief, the Virus Exclusion in the Policy was never intended by the ISO nor Defendant to pertain to a pandemic like the present global COVID-19 Pandemic and therefore does not exclude coverage in this matter." Id. at 5. "Plaintiff purchased the Policy with an expectation that it was purchasing a policy that would provide coverage in the event of a business interruption, such as that suffered by Plaintiff as a result of the COVID-19 Pandemic." Id. at 7.

"Plaintiff submitted a claim on March 9, 2020 for a loss incurred while the Policy was in effect pursuant to terms of the Policy seeking coverage under this Policy. Defendant rejected Plaintiff's claim for coverage[.]" Doc. #40 at 3. Defendant's rejection was based on a number of provisions of the Policy, including:

"This property policy protects your business personal property and/or building against risks of direct physical loss or damage at your Scheduled Premises. You have not identified any direct physical loss to any property at a scheduled premises." Doc. #40-1 at 4.

"The Business Income coverage is not provided for your claim because there has been no physical loss or damage caused by or resulting from a Covered Cause of Loss to property at a scheduled premises." Id.

"We have no information to indicate that a civil authority issued an order as a direct result of a covered cause of loss to property in the immediate area of your scheduled premises; accordingly, this additional coverage is not available for your claimed loss of business income." Id. at 5.

"To the extent you are making a claim for loss of business income from a dependent property, no direct physical loss or damage caused by or resulting from a Covered Cause of Loss has occurred at a Dependent Property. Accordingly, there is no coverage for your claim under this coverage part." Id.

The Hartford also denied coverage based on certain exclusions in

the Policy:

Pollution Exclusion: "The coronavirus is understood to be an irritant or contaminant which causes or threatens to cause physical impurity, unwholesomeness and threatens human health or welfare. Further, the virus was not caused by a 'Specified Cause of Loss'. Accordingly, even if coverage were otherwise available for loss caused by coronavirus, the pollution exclusion could further bar coverage for the loss." Id. at 6.

Consequential Loss Exclusion: "To the extent you are claiming physical loss or physical damage caused by loss of use or loss of market, coverage would be precluded based on the" Consequential Loss Exclusion. Id.

Virus Exclusion: "[W]e will not pay for loss or damage caused directly or indirectly by presence, growth, proliferation, spread or any activity of virus unless the virus results in a 'specified cause of loss' (see

definition cited earlier in this letter). As we understand your loss, the virus has not resulted in a specified cause of loss and there is no coverage for you claim based on the exclusion for virus." <u>Id.</u> at 7.[2]

As noted below, plaintiff is not pursuing coverage under the Civil Authority provision. The other bases for denial of coverage remain in dispute.

## III. <u>Legal Standard</u>

"When deciding a motion to dismiss, a district court may consider documents attached to the complaint or incorporated by reference into the complaint[,]" including an insurance policy referenced in the complaint. <u>New Image Roller Dome, Inc. v. Travelers Indem. Co. of Ill.</u>, 310 F. App'x 431, 432 (2d Cir. 2009) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); <u>accord</u> <u>Kaplan v. Lebanese Canadian Bank, SAL</u>, 999 F.3d 842, 854 (2d Cir. 2021). In reviewing such a motion, the Court "must accept as true all nonconclusory factual allegations in the

---

[2] "Specified cause of loss" is defined as: "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." Doc. #40-1 at 6. Plaintiff does not appear to allege that any of these are at issue.

complaint and draw all reasonable inferences in the Plaintiffs' favor." Kaplan, 999 F.3d at 854 (citations omitted).

"[W]hile this plausibility pleading standard is forgiving, it is not toothless. It does not require [the Court] to credit legal conclusions couched as factual allegations or naked assertions devoid of further factual enhancement." Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (citation and quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (citations and quotation marks omitted).

## III. **Choice of Law**

Plaintiff asserts that the parties "agree that Maryland law applies to Plaintiff's claims." Doc. #42 at 10, n.4. This appears to be true. Defendant notes that "for purposes of this motion, there is no difference between Maryland and Connecticut Law[.]" Doc. #41-1 at 15. The Court therefore applies Maryland law, but has consulted Connecticut law as well.

## IV. **Law Regarding Interpretation of Insurance Policies**

Under Maryland law, insurance policies are interpreted in accordance with the usual rules of contract interpretation:

> Our interpretation of insurance contracts to determine the scope and limitations of the insurance coverage, like any other contract, begins with the language employed by the parties. In our interpretation of the contract, we seek to give the words their customary,

ordinary, and accepted meaning. When the terms of a
contract are ambiguous, courts look to extrinsic sources
to ascertain the meaning of the terms. If the terms are
unambiguous, the court may construe the insurance
contract as a matter of law. A contract term is
determined to be ambiguous if a reasonably prudent
person would understand the term as susceptible to more
than one possible meaning.

MAMSI Life & Health Ins. Co. v. Callaway, 825 A.2d 995, 1005

(Md. 2003) (citations and quotation marks omitted). "Maryland

does not follow the rule embraced by many other states that an

insurance contract is always interpreted in favor of the

insured. However, when a contract contains an ambiguity that is

not resolved by extrinsic or parol evidence, Maryland courts

will construe a policy against an insurer as the drafter of the

policy." W. F. Gebhardt & Co. v. Am. Eur. Ins. Co., 252 A.3d 65,

78 (Md. App. 2021) (citations and quotation marks omitted).

## V.   Discussion

The Hartford asserts that this action should be dismissed

in its entirety on the grounds that: (1) "Plaintiff's Policy

does not cover losses caused by a virus." Doc. #41-1 at 9; (2)

"Plaintiff has not alleged any ... 'physical loss' of or

'physical damage' to property at the premises insured by the

Policy." Id. at 27; and (3) "Plaintiff cannot meet any of [the]

requirements[]" for Civil Authority coverage. Id. at 34.

Plaintiff opposes the motion to dismiss on the first two

grounds, but "is no longer asserting civil authority

coverage[.]" Doc. #42 at 9 n.2. The Court finds that the Virus Exclusion is dispositive of the issues presented.

The Court begins with the threshold interpretive issue of the policy language; the Court finds the language of the Virus Exclusion is not ambiguous. The policy excludes coverage for any loss or damage caused directly or indirectly by a virus. It excludes such coverage whether the virus was the sole cause of the loss, or part of a chain of events that caused the loss. The language is clear and unambiguous: "We will not pay for loss or damage caused directly or indirectly" by presence, spread, or any activity of a virus, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss[.]" Doc. #41-2 at 118. "The exclusion applies whether or not the loss event results in widespread damage or affects a substantial area." Id.

Because the language of the provision is unambiguous, the expectations or beliefs of the parties are not relevant to determining the contract's meaning. See, e.g., Rouse Co. v. Fed. Ins. Co., 991 F. Supp. 460, 465 (D. Md. 1998) ("If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said and will not resort to extrinsic evidence to ascertain the contract's meaning.").

As Judge Kari A. Dooley noted recently, this Court "does not write on a blank slate. Indeed, numerous courts have

examined identical policy provisions and determined that the
Virus Exclusion is unambiguous and applies to claims arising out
of losses caused by the COVID-19 virus." One40 Beauty Lounge LLC
v. Sentinel Ins. Co., Ltd., No. 3:20CV00643(KAD), 2021 WL
5206387, at *2 (D. Conn. Nov. 9, 2021) (collecting cases),
appeal docketed No. 21-3007 (2d Cir. Dec. 9, 2021). Like Judge
Dooley, the undersigned finds the many well-reasoned decisions
finding similar or identical virus exclusion clauses to preclude
coverage persuasive "and sees no useful purpose in repeating the
analysis" in great detail herein. Id.  "The Virus Exclusion in
Plaintiff's Policy is unambiguous and, by its plain meaning,
applies to claims made for losses caused by the COVID-19 virus."
Id.

The Hartford contends that the Virus Exclusion precludes
coverage because the exclusion covers any loss "caused directly
or indirectly" by a virus, "regardless of any other cause or
events that contributes concurrently or in any sequence to the
loss." Doc. #41-1 at 12.

The Policy language "makes the causal scope of the virus
exclusion broad and suggests that it should apply as long as a
virus acts as a link somewhere in the causal chain producing the
loss or damage at issue. That formulation is easily satisfied in
this case." LJ New Haven LLC v. AmGUARD Ins. Co., 511 F. Supp.
3d 145, 151 (D. Conn. 2020). There can be no serious dispute

that plaintiff's claimed losses were "caused directly or
indirectly" by the COVID-19 virus; indeed, the Second Amended
Complaint alleges exactly that. See Doc. #40 at 20.

The broad scope of this exclusion language means that, even
if the alleged presence of COVID in the covered premises is not
a "direct" cause of plaintiff's claimed losses, the COVID virus

> is surely an indirect cause. For starters, it cannot
> seriously be disputed -- and Plaintiff does not dispute
> -- that the virus is at least a 'but for' cause of its
> loss, i.e., that loss would not have been occurred had
> the virus never come into existence or infected human
> beings. And even if the principle of 'strictly
> construing' insurance policy exclusions counsels against
> reading the broad causation language in the virus
> exclusion to embrace every link in the causal chain, no
> matter how remote from the loss incurred by the insured
> ... remoteness is not an issue here. The causal links
> represented by the virus and the Order are interlocking
> -- even intertwined.

LJ New Haven LLC, 511 F. Supp. 3d at 152.

In sum, the Court finds that the unambiguous Virus
Exception unambiguously applies to the claimed losses at issue
in this case.

Plaintiff has provided a lengthy list of cases with its
opposition brief titled: "List of COVID-19 Business Interruption
Insurance Decisions Favorable to Plaintiffs." Doc. #42-2 at 2.
The Court has reviewed these cases,[3] with particular focus on the

---

[3] The Court has considered the cases cited by plaintiff that
addressed motions to dismiss in cases where the policy at issue
did include some form of virus exclusion, and finds each of them
inapposite or unpersuasive. In some, the Court found that it had

federal court decisions.[4] Many of the cases cited are readily distinguishable because the policies at issue **did not have any virus exclusion**. Indeed, the case relied upon most heavily in plaintiff's briefing -- including a quotation that occupies nearly two full pages of single-spaced text -- involves a policy **without a virus exclusion**. See Ungarean, DMD v. CNA, No. GD-20-006544, 2021 WL 1164836, at *12 (Pa. Com. Pl. Mar. 25, 2021) ("Defendants did not include a virus exclusion.").

One case cited by plaintiff that is particularly instructive is the Central District of California decision in

---

insufficient information regarding the policy to reach a decision at the motion to dismiss stage. See, e.g., Thor Equities, LLC v. Factory Mut. Ins. Co., 531 F. Supp. 3d 802, 810 (S.D.N.Y. 2021) ("[T]he complaint does not mention the Loss of Market or Loss of Use Exclusion at all. Nor does it provide a precise explanation of the alleged losses at issue here."); Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd., 489 F. Supp. 3d 1297, 1302 (M.D. Fla. 2020). In another, plaintiff expressly disclaimed any argument that the virus was present in its premises (unlike plaintiff here), and the Court believed the policy at issue was unclear as to whether the virus exclusion applied to business income and extra expense coverage. See Susan Spath Hegedus, Inc. v. ACE Fire Underwriters Ins. Co., No. 20CV02832(BMS), 2021 WL 1837479, at *10-*11 (E.D. Pa. May 7, 2021). Likewise, plaintiff in Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co., 506 F. Supp. 3d 360, 379 (E.D. Va. 2020), unlike plaintiff here, did not allege "that there is a presence of a virus at the covered property nor that a virus is the direct cause of the property's physical loss." These decisions are thus both factually distinguishable and analytically unpersuasive.

[4] The state cases are heavily representative of Ohio, and none appears to apply the law of either Maryland or Connecticut.

<u>Kingray Inc. v. Farmers Grp. Inc.</u>, 523 F. Supp. 3d 1163, 1166 (C.D. Cal. 2021). In <u>Kingray</u>, two separate businesses (Kingray and Nora's) brought suit against Farmers, seeking coverage under their respective insurance policies for losses stemming from COVID shutdowns. <u>See</u> <u>id.</u> at 1170. "Plaintiffs allege that as a result of the Covid-19 civil authority orders, they and their putative class have suffered 'direct physical loss of and damage to' their properties." <u>Id.</u> (citation omitted). The Court observed:

> Critically, Plaintiff Kingray's policy contains certain exclusions that do not appear in the Nora's policy. Kingray's policy contains a provision which excludes 'loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.'

<u>Id.</u> (citations omitted). **Kingray's policy had a virus exclusion. Nora's did not. As a result of that difference, all claims brought by Kingray were dismissed with prejudice, while the claims brought by Nora's were permitted to proceed.** <u>See</u> <u>id.</u> at 1174. "If there were no coronavirus, there would be no Covid-19 pandemic, no Covid-19-related shutdowns, and no need for Kingray to close, operate at a limited capacity, or modify the floor plan of its sports bar. This causal chain is straightforward and unbroken." <u>Id.</u> at 1172. The virus exclusion therefore precluded coverage for Kingray's claims.

Setting aside the question whether the Kingray case should have been listed as a case whose result favors plaintiff at all, the Court agrees fully with its outcome. The virus exclusion matters, and it is dispositive here, as it was for Kingray.

While plaintiff alleges that defendant's claims are not "ripe" for resolution, Doc. #42 at 36-37, the Court disagrees. No additional factual evidence is required to resolve this matter. The language of the Policy itself, which is incorporated into the pleadings, is dispositive.

**VI. <u>Conclusion</u>**

Thus, for the reasons stated, the Motion to Dismiss [**Doc. #41**] is **GRANTED.**

The Clerk shall close this case.

It is so ordered at New Haven, Connecticut, this 17th day of December, 2021.

                                   /s/
                                   HON. SARAH A. L. MERRIAM
                                   UNITED STATES DISTRICT JUDGE